**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Hilary Steward, | 2:15-cv-00408-JAD-NJK |
| Plaintiff | **Order Granting Motion for Summary Judgment and Motion to Strike Supplement** |
| v. | |
| CMRE Financial Services, Inc. and Healthcare Revenue Management Group, | [ECF Nos. 55, 65] |
| Defendants | |

Plaintiff Hilary Steward sues CMRE Financial Services, Inc. and Healthcare Revenue Management Group (HRMG) under the Fair Debt Collection Practices Act (FDCPA)[1] for leaving two identical voicemails on her cell phone purporting to be the "patient accounting department of Centennial Hills Hospital" and calling "regarding a business matter for [a Mr.] Baxter."[2] There is no dispute that Steward is not Baxter, or that defendants were indeed calling for Baxter but had Steward's number by mistake. For these wrong-number messages, Steward pleads two claims alleging that defendants violated the FDCPA's provisions that prohibit debt collectors from using false, deceptive, or misleading means when collecting any debt.[3] She pleads these claims on behalf of herself and a class that she hopes to represent.[4]

Defendants now move for summary judgment on both of Steward's claims, arguing that the FDCPA does not apply to the misdirected voicemails and that Steward doesn't have standing to bring her claims even if it did.[5] Plaintiff argues that HRMG was acting as a debt collector

---

[1] 15 U.S.C. §§ 1692–1692p.

[2] ECF No. 32 at ¶ 20 (amended complaint).

[3] 15 U.S.C. §§ 1692e(11), (14).

[4] *See* ECF No. 32 at ¶¶ 24–28.

[5] ECF No. 55. I find this motion suitable for disposition without oral argument. L.R. 78-1.

when it left the voicemails, and even if she was not the intended recipient, she still has standing to bring at least one of her claims. I find that, based on the evidence, there is no genuine issue as to HRMG's characterization that it was not a debt collector under the FDCPA when it left those voicemails so the FDCPA does not apply. I do not reach the standing arguments. I therefore grant defendants' motion for summary judgment on both of Steward's claims. Steward supplemented her summary-judgment response with evidence that defendants left another pre-recorded message on her cell phone—this time for a Mr. Knapp—after she responded to the summary-judgment motion.[6] Defendants object to Steward's unauthorized supplement.[7] I treat defendants' objection as a motion to strike Steward's unauthorized supplement and I grant it.

## Background

The facts are entirely undisputed. Around October 8, 2014, Mr. Baxter—a stranger to this litigation—received medical treatment from Centennial Hills Hospital, which is operated by Valley Health Systems.[8] For reasons unknown, Steward's phone number was provided on Baxter's intake form.[9] After a patient receives treatment, the hospital generates a bill, and that bill is either sent directly to the patient (if uninsured) or to the patient's insurance company (if insured).[10]

If an uninsured patient doesn't pay the bill within approximately 10 to 12 days, and if an insured patient doesn't pay the balance of his bill within 30 days, his account is then outsourced to an "early-out vendor" for management.[11] The account is not considered in default when it

---

[6] ECF No. 62.

[7] ECF No. 65.

[8] ECF No. 55-2 at 14.

[9] *Id.*

[10] ECF No. 55-3 at 6.

[11] *Id.* at ECF No. 55-3 at 6–8.

2

goes to this early-out vendor.[12]  If the account is not paid off or put on a payment plan within at least 120 days (sometimes longer depending on exceptional circumstances) of its placement with the early-out vendor, the account is retracted back to Centennial Hills.[13]  Only once the account is retracted is it reclassified as bad debt; bad debt is sent to a bad-debt collection agency.[14]  The early-out vendor does not manage any bad-debt accounts.[15]  The wrong-number voicemails were left on February 3 and February 6, 2015, by the early-out vendor (HRMG), so the account was not considered in default at that point or at any time prior.

## Discussion

### A.    Summary-judgment standard

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[16]  When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[17]  If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed, and the case must then proceed to the trier of fact.[18]

If the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific

---

[12] *Id.* at ECF No. 55-3 at 11 (21:2–4 of the transcript), 17 (36:4–10 of the transcript).

[13] ECF No. 55-3 at 17–19 (36:11–38:11 of the transcript).

[14] ECF No. 55-3 at 19 (38:12–16 of the transcript).

[15] ECF No. 55-3 at 23 (49:13–15 of the transcript).

[16] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).

[17] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[18] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

facts showing that there is a genuine issue for trial."[19]  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"; she "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable fact finder could find in her favor.[20]

**B.      The FDCPA does not apply to the voicemails.**

The FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."[21]  The statute defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts,"[22] but expressly excluded from the definition of a debt collector is "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt *which was not in default* at the time it was obtained by such person."[23] "Although the [FDCPA] does not define 'in default,' courts interpreting § 1692a(6)(F)(iii) look to any underlying contracts and applicable law governing the debt at issue."[24]  When there is no evidence of an underlying contract and there is no applicable law governing the debt at issue, courts "apply a case-by-case approach to determin[e] when a debt is in default."[25]

Courts are split on what case-by-case approach they apply, however.  One approach is to

---

[19] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[20] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson,* 477 U.S. at 248–49.

[21] 15 U.S.C. § 1692e (2012).

[22] 15 U.S.C. § 1692a(6) (2012).

[23] 15 U.S.C. § 1692a(6)(F)(iii) (2012) (emphasis added).

[24] *De Dios v. International Realty & Investments*, 641 F.3d 1071, 1074 (9th Cir. 2011).

[25] *Mavris v. RSI Enterprises Inc.*, 86 F. Supp. 3d 1079, 1084 (D. Ariz. 2015) (citing *Natividad v. Wells Fargo Bank, N.A.*, 2013 WL 2299601, at *4 (N.D. Cal. May 24, 2013) and *De Dios*, 641 F.3d at 1075 n.3).

look at the creditor's state of mind and ask whether the creditor considers the debt to be in default.[26]  Another approach is to apply a broad, dictionary-definition-of-default approach and find that any debt that is not paid when due is automatically in default.[27]  And one court in this circuit applies a totality-of-circumstances, all-things-considered approach that asks whether a reasonable person in the *debtor's* position would believe the debt to be in default at the time a third party obtains a debt for collection.[28]  This last approach considers a non-exhaustive list of factors like: (1) the number of times that a creditor has requested payment; (2) the time that has elapsed since the first request; (3) the urgency of the language used in those requests; (4) the debtor's knowledge that she has been referred to a third party; (5) the creditor's internal policies; (6) any representations made by or on behalf of the creditor about how it collects debts; and (7) apparent attempts by the creditor or third party to circumvent the FDCPA's consumer protections.[29]

I decline to follow the dictionary-definition approach because there is a significant difference between a debt that is in default and a debt that is merely outstanding or delinquent.[30] I am persuaded by the state-of-mind approach and adopt it here, but I also apply the totality-of-circumstances approach because the debt in this case is not in default on balance.

### 1.    *State-of-mind approach*

The record is replete with evidence that the creditor did not consider the debt to be in default.  A Centennial Hills account is only considered in default once it is retracted from the early-out vendor (in this case HRMG), reclassified as a bad-debt account, and forwarded to a

---

[26] *See Roberts v. NRA Grp., LLC*, 2012 WL 3288076, at *6 (M.D. Pa. Aug. 10, 2012).

[27] *See Magee v. AllianceOne, Ltd.*, 487 F. Supp. 2d 1024, 1027–28 (S.D. Ind. 2007).

[28] *See Mavris*, 86 F. Supp. 3d at 1085–86.

[29] *Id.* at 1086.

[30] *See Alibrandi v. Financial Outsourcing Services, Inc.*, 333 F.3d 82, 86–87 (2d Cir. 2003) (collecting cases and statutes that distinguish between a late-payment debt and a debt that is in default).

third-party debt-collection agency.  HRMG was still managing Baxter's account when it left the

voicemail on Steward's phone.  By the hospital's own policies, HRMG does not manage any

bad-debt accounts.  Steward offers no evidence to discredit these policies, so it is clear that

Baxter's account was not in default under the state-of-mind approach.  Accordingly, the FDCPA

does not apply to the wrong-number voicemails that were left on Steward's phone because the

FDCPA applies only to debts that are in default.

### 2.   Totality-of-circumstances approach

Steward received two identical voicemails on February 3 and February 6, 2015 stating:

> This is the patient accounting department of Centennial Hills
> Hospital calling today regarding a business matter for [a Mr.]
> Baxter.  Again, this is the patient accounting department of
> Centennial Hills Hospital calling today regarding a business matter
> for [Mr.] Baxter.  We would like to thank you for making us your
> healthcare provider.  We appreciate the opportunity to serve you
> and are available to speak with you should any questions arise.
> Please contact us Monday through Friday 8 am to 5:30 pm at 1-
> 800-404-6627.[31]

Every factor weighs against a finding that a reasonable person in the debtor's position would

believe that the debt was in default based on these messages, so there can be no genuine issue as

to the debt's characterization.  There is barely any indication that the subject of the phone call is

a debt at all.  The only whiff of a debt in this message is the fact that the "*accounting*

department*" is calling "regarding a business matter."  The message does not ask for money, does

not demand payment, and does not mention a debt at all, so it cannot suggest that Baxter's

account was in default.

The next factor—the time between the requests for payment—weighs against in-default

debt as well because a request for payment was never made, so there is no time lapse to consider.

The phone calls were made three days apart, but neither one asks for payment, so the time

between them doesn't matter.  And, there is not even a hint of urgency in this message.  The

messenger states that it is "available to speak with [Baxter] *should any questions arise*."  The

---

[31] ECF No. 32.

messenger doesn't demand a call back, doesn't give any warnings or consequences about a failure to call back, tells Baxter that he can call them back if he has questions, and is appreciative that Baxter chose it to be his healthcare provider. Based on that message, Baxter would have no reason to be believe that a third-party was managing his medical account because the messenger identifies itself as Centennial Hills Hospital. Centennial Hills may have outsourced the account to HRMG as its early-out vendor to manage the account, but Baxter would not have known that based on this message.

As I discussed in Section B(1), the hospital's policies preclude an account from being in default while it is managed by the early-out vendor. Only once the account is retracted from that vendor is it reclassified as in-default and sent off to a third-party debt-collection agency. Steward offers some evidence that CMRE—the entity of which HRMG is a part—is a debt collector, but the exhibit (ECF No. 61-3) actually provides further support that it *is not* a debt collector according to the FDCPA's definition. The web page expressly states that one of CMRE's services (provided by HRMG) is to "[r]educe bad debt assignments and collection costs."[32] It follows, then, that CMRE/HRMG tries to satisfy outstanding and delinquent debts to *prevent* the debt from going into default. Finally, there is no evidence that defendants or the hospital are attempting to circumvent the FDCPA by employing the early-out vendor protocol. In fact, after the account is retracted it is reclassified and sent to a bad debt collection agency, which undoubtedly would fall under the purview of the FDCPA.

**C.    Motion to strike**

One week after filing her response to defendants' summary-judgment motion, Steward filed—without asking for leave to file—a supplement to the response. The supplement mentions that Steward received another voicemail just four days after filing her response. The voicemail says:

> Hello, my name is Nick and I'm calling with Centennial Hills Hospital regarding a personal business matter for [a Mr.] Knapp. Please contact us regarding your business at our facilities. You can

---

[32] ECF No. 61-3.

7

reach us Monday through Friday at 1-800-404-6627. When calling, please use your reference number, it's gonna start with 008005096618. And if we have reached this number in error, please call us back at 1-800-404-6627 so we can remove the number from our. [sic] Thank you, please have a wonderful day.

The local rules require a party to obtain leave of court before filing supplemental pleadings, briefs, authorities, or evidence.[33] Because I did not give Steward leave to file this supplement, it is improper, so I strike it from the record.[34] Even if I did not strike it, though, its inclusion would not change my analyses outlined in Section(B).

### Conclusion

Accordingly, with good cause appearing and no just reason for delay, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants' motion for summary judgment on both of Steward's claims **[ECF No. 55] is GRANTED**.

IT IS FURTHER ORDERED that defendants' objection to Steward's supplemental response, which I treat as a motion to strike, **[ECF No. 65] is GRANTED** and the supplemental response is stricken.

The Clerk of Court is directed to **ENTER JUDGMENT** in favor of CMRE Financial Services, Inc. and Healthcare Revenue Management Group and against Steward on both of her claims for relief and to **CLOSE THIS CASE**.

DATED: September 28, 2017.

_____
U.S. District Judge Jennifer A. Dorsey

---

[33] L.R. 7-2(g).

[34] *Id.*